IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-97-F

| | |
|---|---|
| GLORIA ANN MCKENZIE, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-23, -28] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Gloria Ann McKenzie ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on September 21, 2011, alleging disability beginning October 21, 2010. (R. 20, 168-80). Her claim was denied initially and upon reconsideration. (R. 20, 62-95). A hearing before the Administrative Law Judge ("ALJ") was held on September 19, 2013, at which Claimant, represented by counsel, and a

vocational expert ("VE") appeared and testified. (R. 20, 40-61). On November 27, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 17-39). On April 20, 2015, the Appeals Council denied Claimant's request for review. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial

3

gainful activity since the alleged onset date. (R. 22-23). Next, the ALJ determined Claimant had the severe impairments of depression and anxiety. (R. 23). The ALJ also determined Claimant had the nonsevere impairments of hypertension, diabetes mellitus, high cholesterol, headaches, obesity, obstructive sleep apnea, status-post hysterectomy, neuropathy, median nerve compression syndrome of the left wrist, status-post median nerve compression of the left wrist, and borderline intellectual functioning. (R. 23-24). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25-26).

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC") finding Claimant has the ability to perform work at all exertion levels with a limitation to simple, routine, repetitive tasks. (R. 26-32). In making this assessment, the ALJ found Claimant's statements about her limitations not entirely credible. (R. 27). At step four, the ALJ concluded Claimant is capable of performing past relevant work as a cashier. (R. 32). Alternatively, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 33).

Claimant contends the ALJ erred in assessing Claimant's intellectual deficits and in accounting for her moderate limitations in concentration, persistence, or pace. Pl.'s Mem. [DE-24] at 4-9.

## V. DISCUSSION

### A.  The ALJ's Evaluation of Claimant's Intellectual Deficits

Claimant contends the ALJ erred in evaluating her intellectual deficits both in the

4

consideration of Listing 12.05C and the RFC. *Id.* at 4-8. Defendant contends the ALJ's findings are supported by substantial evidence. Def.'s Mem. [DE-29] at 5-9.

The ALJ found Claimant's borderline intellectual functioning was a medically determinable impairment but not severe, i.e., causes no more than a minimal limitation on the ability of the claimant to perform work activities. (R. 23-25). The ALJ acknowledged that in June 2013 Claimant underwent testing indicating a full scale IQ of 67, verbal comprehension of 61, perceptual reasoning of 77, working memory of 74, and processing speed of 76, and that the examiner concluded Claimant demonstrated considerable deficits in intellectual functioning, which was borderline overall. (R. 24, 613, 616). The ALJ noted the examiner's finding that Claimant did not exhibit any learning disorders but was expected to function at a lower level than typical adults on tasks requiring the use of intellectual reasoning, academic skills, and oral language. (R. 24, 616). The ALJ also noted the examiner's opinion that Claimant could likely do basic tasks best and learn simple tasks with repetition and that Claimant would likely struggle with abstract thinking, reasoning, or problem solving, may perform at a slower pace than most adults do, and have difficulty retaining more than a few basic items in working memory. *Id.* With respect to Listing 12.05, the ALJ found no evidence of a valid IQ score prior to age 22 and that Claimant's activities of daily living, history of substantial gainful activity at the skilled level, and educational history (leaving school to get married, not due to educational difficulties) support a finding that there are no severe deficits in adaptive functioning. (R. 25). In the RFC assessment, the ALJ considered Claimant's testimony, the medical records, and the opinion evidence, noting that Dr. Burnett and Terri Revelle, a licensed psychological associate, both found Claimant could understand simple tasks and instructions with repetition. (R. 31).

To show disability under the listings, a claimant may present evidence either that the

impairment meets or medically equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. §§ 416.925, 416.926. Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. §§ 416.920(d), 416.925(c)(3), 416.926. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (unpublished) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). Thus, where a claimant "fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment," she fails to meet this burden. *Id.* (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

To meet the specific requirements of Listing 12.05, a claimant's impairment must first satisfy the diagnostic description for intellectual disability. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00A. Specifically, the claimant must demonstrate (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) onset before the age of twenty-two. *Id.* § 12.05. Upon satisfaction of the diagnostic description, the claimant must meet the required severity level of the disorder, which is accomplished by satisfying any one of four categories labeled A through D. *Id.* At issue here is category C, Pl.'s Mem. [DE-24] at 4-7, which requires (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) another impairment, physical or mental, imposing an additional and significant work-related limitation of function, 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05C.

Claimant first argues the ALJ incorrectly concluded the IQ requirement was not met because

6

there was no valid IQ score prior to age 22. Pl.'s Mem. [DE-24] at 5-6. The ALJ stated that "[a]lthough Mr. Revelle's report indicated a full scale IQ of 67, there is no evidence of record showing a valid IQ score prior to age 22 for the purposes of Listing 12.05." (R. 25). It is unclear as to whether the ALJ was addressing the requirement of "deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22" or the criteria C requirement of "a valid verbal, performance, or full scale IQ of 60 through 70." In any event, the Fourth Circuit Court of Appeals has found that "there are many possible reasons why an adult would not have obtained an IQ test early in life and the absence of an IQ test during the developmental years does not preclude a finding of mental retardation predating age 22." *Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989) (citing *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985)). Listing 12.05C may still be met despite the fact that Claimant's IQ score was not obtained prior to age 22. However, as explained above, to satisfy Listing 12.05C, Claimant must demonstrate deficits in adaptive functioning in addition to a qualifying IQ score. Therefore, any error by the ALJ is harmless if substantial evidence supports the ALJ's finding that Claimant has no deficits in adaptive functioning.

In finding Claimant lacked the requisite deficits in adaptive functioning, the ALJ cited Claimant's activities of daily living, history of substantial gainful employment at the skilled level, and educational history, i.e., leaving school to get married rather than due to educational difficulties. (R. 25). Claimant contends her past employment is not a bar to meeting Listing 12.05C and that her poor educational history favors a finding of deficits in adaptive functioning. Pl.'s Mem. [DE-24] at 6-7. "Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction,

7

functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. Feb. 23, 2012) (unpublished) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)). Thus, work history may be relevant to determining whether a claimant has deficits in adaptive functioning. *See Mebane v. Colvin*, No. 2:13-CV-43-FL, 2014 WL 3510208, at *6 (E.D.N.C. July 15, 2014) (unpublished) (citing *Hancock v. Astrue*, 667 F.3d 470, 476 (4th Cir. 2012) (affirming the ALJ's finding that claimant did not have deficits in adaptive functioning and considering, among other evidence, work history); *Richardson v. Colvin*, No. 8:12-CV-3507-JDA, 2014 WL 793069, at *12 (D.S.C. Feb. 25, 2014) (unpublished) ("[W]ork history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, . . . can be relevant in determining whether a claimant manifested deficits in adaptive functioning . . . .")). However, "prior work history can be of limited relevance if it precedes the development of additional severe impairments . . . ." *Id.* Claimant worked for ten years as a breakfast manager at Hardee's, a *skilled* job where her duties included scheduling and supervising five to six workers, counting money from the registers and depositing it in the safe, making sure employees took breaks, cleaned, and stocked for the next shift, and helping with cooking, cleaning, and working the register. (R. 27, 48-49, 57, 197, 202). Claimant later worked as a cashier at a grocery store and in January 2011 told Dr. Burnett she left that job to take care of her father, which was why she was not working at that time, and not due to the development of additional severe impairments. (R. 27, 373). Here, there was no error in the ALJ's reliance on Claimant's work history in finding no deficits in adaptive functioning.

Furthermore, although Claimant is correct that her school records indicate a pattern of poor academic performance, that is but one factor to be considered, and "[t]he ALJ had the duty to find facts and consider the import of conflicting evidence." *Hancock*, 667 F.3d at 476 (citation omitted).

8

In addition to Claimant's work history, the ALJ cited Claimant's hearing testimony and statements to Dr. Burnett that she helps take care of her stepfather, including cleaning, cooking, shopping, paying bills, laundry, administering medication, and assisting in personal care, gets her kids to school, and enjoys working on the computer. (R. 25, 45-47, 374). Although Claimant argues that her depressive and anxiety disorders would erode her motivation and ability to perform tasks, Pl.'s Mem. [DE-24] at 7, the ALJ cited evidence from Claimant's psychiatrist and primary care physician indicating that Claimant's depression and anxiety were controlled with medication (R. 29, 548, 550, 552, 601-04). The ALJ also limited Claimant to simple, routine, repetitive tasks to account for any effects of anxiety or depression. (R. 32). The evidence cited by the ALJ is sufficient to support the determination that Claimant has no deficits in adaptive functioning, and it is not the province of the court to reweigh the evidence where the ALJ's decision is supported by substantial evidence. *See Hancock*, 667 F.3d at 476 (finding no error in the ALJ's determination that the claimant had no deficits in adaptive functioning where the claimant had a substantial work history and performed a variety of tasks inconsistent with intellectual disability).

Claimant also argues that the limitation to simple, routine, repetitive tasks fails to address her intellectual deficits in the RFC. Pl.'s Mem. [DE-24] at 7. Claimant does not suggest what further restrictions the ALJ should have imposed. Additionally, the ALJ's misstatement that Dr. Burnett had "ruled out" borderline intellectual functioning (R. 31), rather than finding that this diagnosis needed to be ruled out,[1] has no material impact on the ALJ's decision, where both Dr. Burnett and Revelle found Claimant could understand and learn simple tasks with instruction and

---

[1] The ALJ correctly stated earlier in the RFC analysis Dr. Burnett's diagnosis of "rule out borderline intellectual functioning." (R. 28).

9

repetition consistent with the RFC. (R. 31, 375, 616). The ALJ also noted Dr. Degala's finding on mental status examination that Claimant was *functioning* on an average level of intellect. (R. 28, 610); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (defining RFC as the most an individual can do despite physical or mental limitations). Accordingly, the RFC determined by the ALJ sufficiently accounts for Claimant's intellectual functioning.

## B. The ALJ's Consideration of Claimant's Moderate Limitations in Concentration, Persistence, or Pace

Claimant contends that the ALJ did not sufficiently account for Claimant's moderate limitations in concentration, persistence, or pace in the RFC in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015). Pl.'s Mem. [DE-24] at 8-9. Defendant contends the ALJ's RFC in this regard is supported by substantial evidence. Def.'s Mem. [DE-29] at 9-11.

In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court also indicated that there could be instances where a limitation in concentration, persistence, or pace does not affect the Claimant's ability to work and would be appropriately excluded from the RFC. In such circumstances, however, an explanation from the ALJ is required. *Id.*

Here, in assessing Claimant's concentration, persistence, or pace, the ALJ found Claimant

10

had moderate difficulties specifically in maintaining concentration over time, noting her reported anxiety, depression, impaired sleep, difficulty coping with stressors, and fluctuating appetite and energy level. (R. 25, 375). The ALJ limited Claimant to simple, routine, and repetitive tasks to address Claimant's mental impairments, including limitations on concentration caused by anxiety and depression, because Dr. Burnett and Revelle found Claimant could understand and learn simple tasks with instruction and repetition but would struggle with novel tasks. (R. 31, 375, 616). Additionally, while Revelle opined that based on her testing Claimant may perform at a slower pace than most adults, the ALJ did not fully credit Revelle's opinion. (R. 31). And, as discussed above, there is substantial evidence to support the ALJ's conclusion that Claimant's borderline intellectual functioning was not severe and that she was capable of functioning at a higher level based on her work history and activities of daily living. *See Reiser v. Colvin*, No. 5:14-CV-850-FL, 2016 WL 1183092, at *8 (E.D.N.C. Mar. 28, 2016) (unpublished) (lack of evidence that claimant had significant limitations in her ability to perform at a consistent pace made inclusion in RFC of a limitation on pace unnecessary). Accordingly, this case is distinguishable from *Mascio* and the ALJ sufficiently accounted for Claimant's moderate limitation in concentration by limiting her to simple, routine, and repetitive tasks.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-23] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-28] be ALLOWED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 22, 2016** to file

11

written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

SUBMITTED, this the 8th day of August 2016.

_____
Robert B. Jones, Jr.
United States Magistrate Judge

12